UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cr-00379-MTS |
| | ) | |
| SERENA SHEPPARD, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant Serena Sheppard, represented by defense counsel Felicia Jones, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts II and IV of the charge, the Government agrees to move for dismissal as to Counts I and III at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant

1

knowingly and intentionally possessing with the intent to distribute a detectable amount of actual methamphetamine on May 13, 2020, and knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of fentanyl on May 28, 2020, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts II and IV, to forfeit to the United States all property subject to forfeiture under the applicable statutes.

## 3. ELEMENTS:

### Count II:

As to Count Two, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(l) and 841(b)(l)(C), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One,* on or about May 13, 2020, within the Eastern District of Missouri, the defendant knowingly possessed methamphetamine;

2

*Two,* the defendant knew that she was in possession of methamphetamine;

*Three,* the defendant intended to distribute some or all of the methamphetamine to another person.

**Count IV:**

As to Count Four, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(l) and 841(b)(l)(C), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One,* on or about May 28, 2020, within the Eastern District of Missouri, the defendant knowingly possessed fentanyl;

*Two,* the defendant knew that she was in possession of fentanyl;

*Three,* the defendant intended to distribute some or all of the fentanyl to another person.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In 2020, Task Force Officers with the Drug Enforcement Administration were informed by a confidential source that Serena Sheppard was a distributor of illegal narcotics within the Eastern District of Missouri. On or about April 7, 2020, the confidential source called a cellular telephone associated with Sheppard. During the telephone call the confidential source and Sheppard agreed to conduct a drug transaction. Investigators proceeded to follow the confidential source to the meeting location. At the meeting location, Sheppard proceeded to enter the

3

confidential source's vehicle. Sheppard subsequently directed the confidential source to drive to another location within the Eastern District of Missouri in order to obtain additional narcotics. Sheppard directed the confidential source to drive to, and eventually park in front of, a Jack in the Box restaurant. Investigators followed the confidential source and Sheppard to the restaurant. Investigators subsequently observed Sheppard step out of the confidential source's vehicle and get inside of another vehicle. Sheppard proceeded to get back inside of the confidential source's vehicle and depart the area.

Sheppard proceeded to distribute suspected fentanyl to the confidential source in exchange for United States currency. After the drug transaction took place, Sheppard left the confidential source's vehicle. The confidential source proceeded to drive to another location and meet with investigators. Investigators seized the suspected fentanyl from the confidential source. The suspect fentanyl was later submitted to the DEA North Central Laboratory and confirmed to be at least 2.13 grams of a mixture or substance containing a detectable amount of fentanyl.

On or about May 13, 2020, Task Force Officers received information from a confidential source that Sheppard intended to sell narcotics to an unknown individual on the same date. The confidential source provided identifying information of what vehicle Sheppard intended to drive that day in order to complete the drug transaction. Officers with the Lake St. Louis Police Department located the vehicle while Sheppard was driving it. Officers proceeded to conduct a traffic stop of the vehicle being operated by Sheppard. Sheppard eventually admitted to officers that she had contraband on her person. Officers located several clear plastic baggies containing white powder, and another bag containing a clear rock like substance. Officers also located a pipe

4

on Sheppard's person and a digital scale inside of Sheppard's open purse. Sheppard was also found to be in possession of a small marijuana blunt[1]. The baggies containing suspected narcotics were seized by officers and later submitted to the Drug Enforcement Administration North Central Laboratory which revealed the presence of at least 1.4 grams of actual methamphetamine, and at least 2.42 grams of a mixture or substance containing a detectable amount of fentanyl.

On or about May 20, 2020, a confidential source contacted Sheppard over the telephone at the direction of investigators. Sheppard and the confidential source arranged to meet at Sheppard's residence in order to conduct a drug transaction. Sheppard's residence is located within the Eastern District of Missouri.

Task Force Officer Joe McKinney, and the confidential source, traveled within the same vehicle in order to meet Sheppard. Upon arriving at Sheppard's residence, the confidential source contacted Sheppard, and Sheppard proceeded to enter the vehicle with Task Force Officer McKinney and the confidential source. Task Force Officer McKinney observed Sheppard distribute suspected fentanyl to the confidential source in exchange for United States currency. Sheppard proceeded to exit the vehicle before Task Force Officer McKinney and the confidential source departed.

Investigators seized the suspected narcotics from the confidential source. Investigators later submitted the suspected narcotics to the DEA North Central Laboratory. The suspected

---

[1] The suspected marijuana was not tested by a laboratory, and the parties agree that the amount of marijuana possessed by Sheppard on this date is insignificant to effect the final converted drug weight.

narcotics were tested and confirmed to be at least 1.43 grams of a mixture or substance containing a detectable amount of fentanyl.

On or about May 28, 2020, investigators received information from a confidential source that Sheppard was in possession of illegal narcotics. The confidential source told investigators identifying information of a vehicle that Sheppard was driving that day. Investigators shared the information regarding Sheppard's vehicle with officers from the Lake St. Louis Police Department.

Later that day, officers with the Lake St. Louis Police Department located Sheppard's vehicle and conducted a traffic stop of the vehicle. Sheppard was occupying the driver's seat of the vehicle, and another individual was located in the passenger seat. The officers smelled the odor of marijuana emanating from the vehicle and conducted a search of the vehicle. Inside of the vehicle, officers discovered small amounts of marijuana on the floorboard, and several clear plastic baggies containing white residue. Officers also located a cigarillo wrapper with one partially burnt marijuana blunt[2] inside of Sheppard's purse.

Sheppard eventually admitted to officers on scene that she had further contraband located in her bra. Sheppard retrieved, and immediately relinquished, several clear plastic baggies containing suspected narcotics to an officer. Sheppard also told the officer that the suspected narcotic was heroin. Investigators latter submitted the suspected narcotics to the DEA North

---

[2] The suspected marijuana was not tested by a laboratory, and the parties agree that the amount of marijuana possessed by Sheppard on this date is insignificant to effect the final converted drug weight.

Central Laboratory which revealed the presence of at least 3.78 grams of a mixture or substance containing fentanyl and at least 0.09 grams of actual methamphetamine.

If this case were to go to trial, an expert witness would testify that the amounts of methamphetamine and fentanyl seized from Sheppard are inconsistent with possession for personal consumption and are instead consistent with possession for distribution purposes.

Based on the totality of the evidence, including relevant conduct, the parties agree that Sheppard is accountable for at least 1.49 grams of actual methamphetamine and at least 9.76 grams of a mixture or substance containing a detectable amount of fentanyl resulting in an aggregate amount of converted drug weight of at least 40 kilograms of converted drug weight, but less than 60 kilograms of converted drug weight.

## 5. <u>STATUTORY PENALTIES</u>:

### Counts II, IV:

In regards to Counts II and IV of the Indictment, the defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty, respectively, is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years. In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

## 6. <u>U.S. SENTENCING GUIDELINES(2018 MANUAL)</u>:

7

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level:** The parties agree that the base offense level is 18, as found in Section 2D1.1. Based on the totality of the evidence, including relevant conduct, the parties agree that Sheppard is accountable for at least 1.49 grams of actual methamphetamine and at least 9.76 grams of a mixture or substance containing a detectable amount of fentanyl resulting in an aggregate amount of converted drug weight of at least 40 kilograms of converted drug weight but less than 60 kilograms of converted drug weight, resulting in the agreed Base Offense Level.

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the

court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

     **(2)**  **Other Adjustments:**  The parties have no further agreement regarding any other adjustments.

    **d. Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 15. Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1 or an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. If the Court finds the defendant is a Career Offender or an Armed Career Criminal or both, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender or an Armed Career Criminal.

    **e. Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea

agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a.  Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

10

**b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

**a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of

11

supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

     **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

     **e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

     **f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

     **g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest

the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

13

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

**10. <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

14

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

9|14|22
_____
Date

_____
Ricardo Dixon   #7002LMO
Assistant United States Attorney

15

9/14/22
Date

Serena Sheppard
Defendant

9/14/22
Date

Felicia Jones
Attorney for Defendant

16